UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

HERMAN KELLEY and BESSIE BANKS,

                        Plaintiffs,

       -v-

THE UNIVERSAL MUSIC GROUP, ISLAND DEF
JAM MUSIC GROUP, ISLAND DEF JAM RECORDS,
DESERT STORM RECORDS, KILA RECORDS, and
JOHN DAVID JACKSON p/k/a FABOLOUS,

                        Defendants.

------------------------------------------------------------X

14 Civ. 2968 (PAE)

OPINION & ORDER

**PAUL A. ENGELMAYER, District Judge:**

In or about 1974, plaintiffs Herman Kelley and Bessie Banks co-wrote a song, "Try To Leave Me If You Can" ("Try"). In 2012, they allege, "Try" was infringed when defendant John David Jackson (referred to here by his professional name, "Fabolous") performed the song "For the Love" ("Love"), within which portions of "Try" were "sampled." Plaintiffs, *pro se*, now bring claims including copyright infringement, under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*, against Fabolous, UMG Recordings, Inc. ("UMG"),[1] Island Def Jam Music Group ("IDJMG"), Island Def Jam Records ("IDJR"), Desert Storm Records ("DSR"), and Kila Records ("Kila").

UMG, the parent company of IDJMG and IDJR, now moves to dismiss all claims in the amended complaint under Federal Rule of Civil Procedure 12(b)(6). They argue, *inter alia*, that plaintiffs lack standing to bring a copyright infringement claim. In the alternative, UMG moves

---

[1] UMG was incorrectly sued in the name "the Universal Music Group."

for summary judgment as to the copyright claim, arguing that UMG never released, or received income from, the "Love" recording.

For the following reasons, the Court grants the motion to dismiss, but without prejudice to plaintiffs' right to replead.

**I.      Background**

     **A.      Factual Background**[2]

In or about 1974, plaintiffs and Frank Green, a non-party to this action, co-wrote and produced "Try," a musical composition. AC ¶¶ 1, 12. That same year, the "Try" composition was registered with the United States Copyright Office, with the registration number Eu513738. *Id.*, Ex. F. Plaintiffs and Green are listed as the co-authors of "Try"; the New York Times Music Corporation ("NYT") and Eden Music Corp. ("Eden") are listed as the copyright claimants. *Id.*

On April 18, 1994, plaintiff Kelley signed a Popular Songwriters Renewal Contract (the "April 1994 contract") with the Iza Music Corporation ("Iza"), allegedly now The Clyde Otis Music Group ("Clyde Otis"). AC, Ex. L. Under the contract, Kelley—in exchange for licensing royalties—transferred to Iza "any and all rights and interests whatsoever now or at any time or times hereafter known or in existence which [Kelley] [then] possess[ed] or which he [might] at any time or times [t]hereafter acquire or possess" in compositions he authored, including "Try." *Id.* at 1; *id.* at Schedule A.

---

[2] Except as otherwise noted, the Court's account of the facts of this case are drawn from the Amended Complaint and the exhibits attached thereto. Dkt. 10 ("AC"). In resolving the motions to dismiss, the Court assumes all well-pled facts to be true and draws all reasonable inferences in favor of the plaintiffs. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). The facts underlying the Court's decision to dismiss is based solely on the FAC and documents incorporated therein.

On or about November 22, 2012, "Love" was commercially released on the IDJR record label. AC ¶ 2. "Love" was also included in Fabolous' "S.O.U.L. Tape 2" and "The Soul Collection" compact discs, as well as a music video. Id.[3]

In December 2012, plaintiffs allege, they discovered that "Try" had been sampled and used in "Love." Id. ¶ 1. "Love" was played "heavily" by nationally syndicated radio stations, such as WBLS 107.5 and Power 105.1, between November 22, 2012 and March 2013. Id. ¶ 10. Since January 2013, the "Love" music video also has been accessible on YouTube.com. Id.[4] On May 4, 2013, The Soul Collection was released. AC ¶ 2.

On March 24, 2014, Deborah Evans, a representative of Clyde Otis, wrote a letter to Ian Allen, a representative of IDJR and The Universal Music Group, notifying Allen that "Try" had been sampled in "Love." Id., Ex. K. The March 24 letter stated that Clyde Otis owned the rights of the "Try" master recording, and requested a "non-recoupable fee" for Fabolous' use of the master recording in "Love." Id.

On August 23, 2014, after this action had commenced, Isidro Otis, the president of Clyde Otis, wrote Kelley a letter, notifying Kelley that Clyde Otis had decided not to pursue copyright infringement claims against Fabolous for his alleged infringement of the master recording of "Try." Id., Ex. M. The letter also stated that Clyde Otis had "no objection to [plaintiffs] (the writers) pursuing this matter independently." Id.

---

[3] Plaintiffs claim that "Love" was not registered or licensed with Broadcast Music, Inc., a performing rights organization, which collects licensing royalties for artists' compositions. AC ¶ 10.

[4] See also YouTube, "Fabolous – For The Love [video] (The Soul Tape 2)," https://www.youtube.com/watch?v=nfQSqsQp2GI (last accessed October 19, 2015).

3

### B.    Procedural History

On April 22, 2014, plaintiffs filed an initial Complaint.  Dkt. 2.  On August 27, 2014, they filed an amended complaint, bringing claims of (1) copyright infringement, (2) violation of plaintiffs' "poetic license," (3) fraudulent deceit and conspiring to swindle, and (4) mental anguish.  Dkt. 10 ("AC").  Each claim is based on Fabolous' alleged sampling in "Love" of "Try," and is brought against DSR and Kila because they were "affiliated companies also involved in wrongfully using plaintiff[s'] song."  *Id.* at 2.  UMG, IDJMG, and IDJR are sued as the alleged parent companies of DSR and Kila.  *Id.*  Plaintiffs seek $600,000 in damages ($150,000 for each claim).  *Id.* at 10–11.

On June 2, 2015, UMG moved to dismiss, or in the alternative for summary judgment, Dkt. 48, along with a supporting memorandum of law, Dkt. 49 ("UMG Br."), and a declaration by Nicole Wyskoarko, a UMG senior vice president, Dkt. 51 ("Wyskoarko Decl.").  UMG represented that IDJMG and IDJR are unincorporated divisions of UMG; thus, UMG's motion to dismiss is on behalf of itself, IDJMG, and IDJR.  Dkt. 48, at 1 n.1.[5]  On June 15 and 24, 2015, plaintiffs filed an opposition to UMG's motion to dismiss, Dkt. 56–57 ("Pls. Br."), and attached new exhibits, Dkt. 58–67.  On July 14, 2014, UMG filed a reply.  Dkt. 68 ("UMG Reply Br.").

## II.    Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[5] In her declaration, Wyskoarko stated that, contrary to the allegation in the Amended Complaint, DSR and Kila are not UMG subsidiaries or affiliates.  Wyskoarko Decl. ¶ 2.

4

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief."  *Twombly*, 550 U.S. at 558.  Accordingly, a district court must accept as true all well-pleaded factual allegations in the complaint, and draw all inferences in the plaintiff's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  However, that tenet "is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

District courts are "obligated to construe *pro se* complaint[s] liberally," *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), interpreting them "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).  Courts may not, however, "read into *pro se* submissions claims that are not 'consistent' with the *pro se* litigant's allegations, or arguments that the submissions themselves do not 'suggest.'"  *Id.* at 477 (citations omitted).  *Pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law."  *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981)) (internal quotation marks omitted).

### III.   Discussion

UMG seeks to dismiss all four claims.  It argues that (1) the copyright infringement claim should be dismissed for lack of standing; (2) the second and third claims, involving a breach of "poetic license" and for "deceit" and "swindle," are preempted by the Copyright Act; and (3) the claim for mental anguish is an impermissible attempt to expand the remedies available under the Copyright Act.  The Court addresses these claims in turn.

### A.     Copyright Infringement

UMG challenges the copyright infringement claim for lack of standing because plaintiffs have not alleged facts sufficient to show that they own the "Try" copyright. UMG Br. 5–7. Under the Copyright Act, "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b); *see also Russian Entm't Wholesale, Inc. v. Close-Up Int'l, Inc.*, 482 F. App'x 602, 604 (2d Cir. 2012) (summary order); *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 32 (2d Cir. 1982) ("The Copyright Act authorizes only two types of claimants to sue for copyright infringement: (1) owners of copyrights, and (2) persons who have been granted exclusive licenses by owners of copyrights."), *superseded on other grounds by* Fed. R. Civ. P. 52(a). "In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c).

Here, the Amended Complaint attaches a copy of the copyright registration certificate. It identifies NYT and Eden, but not plaintiffs, as the copyright claimants of the "Try" composition. AC, Ex. F. It lists plaintiffs only as the co-authors of that work, *id*., not as owners of it. On the basis of the certificate, plaintiffs therefore do "not have standing to bring a claim for copyright infringement because plaintiff[s] [were] not the owner[s] of the work when the alleged copyright infringement took place." *Contractual Obligation Prods., LLC v. AMC Networks, Inc.*, No. 04 Civ. 2867 (BSJ) (HBP), 2006 WL 6217754, at *5 (S.D.N.Y. Mar. 31, 2006); *see also Arthur A. Kaplan Co., Inc. v. Panaria Int'l, Inc.*, No. 96 Civ. 7973 (HB), 1998 WL 603225, at *2

(S.D.N.Y. Sept. 11, 1998); *Skor-Mor Prods., Inc. v. Sears, Roebuck & Co.*, No. 81 Civ. 1286 (CSH), 1982 WL 1264, at *3 (S.D.N.Y. May 12, 1982).

In opposing dismissal, plaintiffs make two arguments.

First, plaintiffs argue, for the first time, that they are beneficial owners of the "Try" composition copyright. A beneficial owner is "the original author who transfer[s] [an exclusive copyright] to another, but . . . [is] entitled to receive royalties from that new owner for the exploitation of the author's work." *Poindexter v. Cash Money Records*, No. 13 Civ. 1155 (RWS), 2014 WL 818955, at *5 (S.D.N.Y. March 3, 2014); see also *Cortner v. Israel*, 732 F.2d 267, 271 (2d Cir. 1984) ("When a composer assigns copyright title to a publisher in exchange for the payment of royalties, an equitable trust relationship is established between the two parties which gives the composer standing to sue for infringement of that copyright."); *Harris v. Simon & Schuster, Inc.*, 646 F. Supp. 2d 622, 632 (S.D.N.Y. 2009) ("author and sole copyright holder" who "granted S&S limited rights in the Work in exchange for the payment of royalties" is a "beneficial owner"); *id.* (collecting cases).

On the pleadings and attached and incorporated materials, however, there is no basis to treat plaintiffs as the beneficial owners of the "Try" composition copyright. The 1974 copyright registration certificate identifies NYT and Eden as the owners of that copyright. The Amended Complaint does not allege that, let alone explain by what means, plaintiffs retained a beneficial interest in that copyright. It therefore is necessary for plaintiffs to plead that they subsequently became such owners. To support the claim of beneficial ownership, plaintiffs rely on Kelley's April 1994 contract with Clyde Otis. Under it, Kelley transferred to Clyde Otis all rights he held to all compositions he wrote, including "Try," in exchange for licensing royalties. AC, Ex. L. But this agreement does not establish that, or explain how, plaintiffs by then had acquired rights

7

in "Try" from the owners of such rights (*i.e.*, NYT and Eden), such that plaintiff could transfer such rights to Clyde Otis. Put differently, the 1994 agreement presupposes, but does not establish, that plaintiffs owned such rights.

This omission from the pleadings is pivotal. Under the Copyright Act, ownership of a copyright may be transferred in two ways. The first is by operation of law (*e.g.*, dissolution of the corporate entity owning the copyright); the second is by "an instrument of conveyance, or a note or memorandum of the transfer . . . in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a); *see also Dallal v. N.Y. Times Co.*, 352 F. App'x 508, 511 (2d Cir. 2009) (summary order) (citing *Davis v. Blige*, 505 F.3d 90, 100 n.10 (2d Cir. 2007)). Plaintiffs do not claim a transfer by operation of law. And the Amended Complaint does not allege that there was ever a written instrument of conveyance or other signed writing conveying these rights in "Try" to plaintiffs from the copyright owner.

Second, plaintiffs note that in two previous copyright infringement cases brought by Kelley "ownership of copyright was disregarded based on the evidence presented." Pls. Br. 2 (citing *Kelley v. EMI Music Publishing*, 11 Civ. 7781 (KBF); *Kelley v. Am. Society of Composers, Authors & Publishers*, 10 Civ. 4130 (PGG) [hereinafter "*ASCAP*"]). And, citing *Williams v. Bridgeport Music, Inc.*, No. 13 Civ. 6004 (JAK), 2015 WL 4479500 (C.D. Cal. July 14, 2015), they argue that copyright ownership is not required to bring a copyright infringement claim. Pls. Br. 3.

The two earlier cases brought by Kelley do not assist plaintiffs. In *EMI*, defendants, in their answer, had asserted that Kelley lacked standing, Dkt. 11, at 8; the case was dismissed with prejudice before discovery commenced, Dkt. 43. In *ASCAP*, Kelley voluntarily dismissed that

case with prejudice before a response to the complaint was filed. Dkt. 10. Far from showing that the standing requirement is met here, these cases reflect early, pre-merits dismissals.

Nor does *Williams* avail plaintiffs. In *Williams*, Pharrell Williams, Robin Thicke, and Clifford Harris, Jr., who together composed the song "Blurred Lines," filed a complaint seeking declaratory relief. The complaint alleged that the children of singer Marvin Gaye—who wrote, composed, and sang "Got to Give It Up"—had contended that "Blurred Lines" infringed a "Got to Give It Up" copyright. 2015 WL 4479500, at *1. Williams, Thicke, and Harris sought a declaration that "Blurred Lines" did not so infringe. *Id.* Gaye's children claimed that ownership of the "Got to Give It Up" copyright had reverted to the Gaye family by operation of law after Gaye's 1984 death. *Williams v. Bridgeport Music, Inc.*, No. 13 Civ. 6004 (JAK), 2014 WL 7877773, at *2 (C.D. Cal. Oct. 30, 2014). The jury found that the Gaye children indeed owned the copyright, and that Williams and Thick had infringed it in composing "Blurred Lines." 2015 WL 4479500, at *1. The jury awarded the Gaye children $4 million in actual damages. *Id.* The salient point here, however, is that the Gaye children were required to prove copyright ownership in order to assert their copyright infringement claim. The Amended Complaint here does not supply a factual basis on which plaintiffs' ownership could be found.

Accordingly, the Court dismisses plaintiffs' copyright infringement claim.[6]

---

[6] UMG alternatively moves for summary judgment as to this claim, on the ground that "UMG [] never manufactured, released, exploited, or received income from the sound recording entitled 'For the Love' or the Projects on which Fabolous allegedly performed 'For the Love.'" UMG Br. 4. As support for this point, UMG relies on the Wyskoarko declaration. *Id.* Because it has granted the motion to dismiss, the Court need not reach the merits of this claim. Further, granting summary judgment on this ground would not be appropriate where the *pro se* plaintiffs have not had an opportunity to conduct discovery as to this point. *See Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 307 (2d Cir. 2003); *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 98 (2d Cir. 2000); *Perkins v. Bronx Lebanon Hosp.*, No. 14 Civ. 1681 (PAE), 2015 WL 3649330, at *7 (S.D.N.Y. June 11, 2015). The Court therefore denies the motion for

B.     Violation of Plaintiffs' Poetic License

Plaintiffs' second claim is that defendants violated plaintiffs' state-law "Poetic License rights" by "wrongfully and willfully act[ing] as though they were the writers of plaintiffs' song by extracting a specific section of it (sample) from the original master and in doing so, made unauthorized alterations that speeded up the tempo, [and] distorted and damaged the musical and vocal characteristics of plaintiffs' song." AC ¶¶ 13–14.  Plaintiffs claim that only plaintiffs, their co-writer Green, and the publisher of the "Try" composition have the "right under the rule of poetic license to make creative changes in their copyrighted work." *Id.* ¶ 15.

UMG argues that this claim effectively presumes to define plaintiffs' copyright interests and is preempted by the Copyright Act.  UMG is correct.

"A state cause of action is preempted by federal copyright laws if the subject matter of the state-law right falls within the subject matter of the copyright laws and the state-law right asserted is equivalent to the exclusive rights protected by federal copyright law." *Kregos v. Associated Press*, 3 F.3d 656, 666 (2d Cir. 1993) (citing *Harper & Row, Publishers, Inc. v. Nation Enters.*, 723 F.2d 195, 200 (2d Cir. 1983), *rev'd on other grounds*, 471 U.S. 539 (1985)); *see also* 17 U.S.C. § 301(a).  Under the Copyright Act, the "owner of copyright . . . has the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending . . . ." 17 U.S.C. § 106.  "Whether a state law claim is preempted depends on whether it is derivative of a copyright claim or is based

---

summary judgment, without prejudice to UMG's right to renew such a motion in the event this litigation continues.

10

on an 'extra element' beyond those of a copyright claim." *Weber v. Geffen Records, Inc.*, 63 F. Supp. 2d 458, 462 (S.D.N.Y. 1999); *see also Kregos*, 3 F.3d at 666.

Here, the gravamen of plaintiffs' poetic license claim is that defendants have violated plaintiffs' exclusive right to prepare derivative works of the "Try" composition, which is a right conferred under the Copyright Act. *See* 17 U.S.C. § 106(2). The Copyright Act therefore preempts plaintiffs' violation of their poetic license claim. Plaintiffs' claim that their rights were violated by defendants' alleged preparation of a derivative or altered version of "Try" therefore is to be judged solely under the Copyright Act.

### C. Fraudulent Deceit and Conspiracy to Swindle

In another state-law claim, plaintiffs claim that defendants distributed "Love" for free on the Internet, thereby "swindl[ing] and depriv[ing] [plaintiffs] of any income generated from the exploitation of" "Love." AC ¶ 18. The Copyright Act preempts this claim, too. That is because the Copyright Act is the sole source of the copyright owner's distribution rights—it gives the owner the exclusive right "to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership." 17 U.S.C. § 106(3). Here, plaintiffs' claim of deceit and swindling is ultimately that defendants breached plaintiffs' purportedly exclusive distribution rights. Plaintiffs' claim of such a breach may not be pursued under these alleged state-law causes of action, but under the Copyright Act only.

### D. Mental Anguish

Finally, Kelley alleges that since January 2013, he has "suffered from feelings of distress, anxiety and depression, which interferes with his creative ability, hinders his inspiration to write and consequently stagnates his income" because of defendants' alleged infringement in "Love."

11

AC ¶ 19.  The Court understands this allegation, although presented as a claim of liability, to describe a category of alleged damages which plaintiffs seek.

UMG claims that such damages fall outside the remedies statutorily authorized for copyright infringement.  UMG Br. 12.  The Court agrees.  In *Stern v. Does*, the plaintiff similarly sought "emotional distress and stress-related ailments arising from" the alleged infringement.  978 F. Supp. 2d 1031, 1050 (C.D. Cal. 2011).  The district court held that none of these claims are compensable under the Copyright Act.  *Id.* (citing *Mackie v. Riser*, 296 F.3d 909, 917 (9th Cir. 2002) (holding that "'hurt feelings' over the nature of the infringement [have] no place in [the damages] calculus")).  This Court is unaware of any contrary authority.  This damages claim is therefore dismissed.

### E.     Right to Replead

The Court grants plaintiffs leave to replead one final time, but only as to their copyright infringement claim under the Copyright Act.  Guided by this decision, plaintiffs may be able, in a Second Amended Complaint, to adequately plead standing to bring such a claim, by alleging concrete facts supporting either actual or beneficial copyright ownership as to "Try."  The Court does not, however, give plaintiffs the right to replead the AC's other three claims, which are either preempted by or seek damages outside the scope of the Copyright Act.

### CONCLUSION

For the foregoing reasons, the Court grants UMG's motion to dismiss, without prejudice to plaintiffs' right to file a Second Amended Complaint ("SAC").  Plaintiffs are directed to file a SAC by November 23, 2015.  In the event plaintiffs file such a pleading, defendants' response will be due two weeks later.  In the event defendants respond with a motion to dismiss, plaintiffs'

brief in opposition will be due two weeks later, and defendants' reply will be due one week after that. If plaintiffs elect not to file a SAC, the case will be closed with prejudice.

The Clerk of Court is directed to terminate the motion pending at docket number 48.

SO ORDERED.

                                           *Paul A. Engelmayer*
                                           Paul A. Engelmayer
                                           United States District Judge

Dated: October 19, 2015
          New York, New York