```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/29/16
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
HERMAN KELLEY and BESSIE BANKS,                                   :
                                                                  :        14 Civ. 2968 (PAE)
                                     Plaintiffs,                  :
                                                                  :        OPINION & ORDER
                                                                  :
                  -v-                                             :
                                                                  :
THE UNIVERSAL MUSIC GROUP, ISLAND DEF                             :
JAM MUSIC GROUP, ISLAND DEF JAM RECORDS,                          :
DESERT STORM RECORDS, KILA RECORDS, and                          :
JOHN DAVID JACKSON p/k/a FABOLOUS,                                :
                                                                  :
                                     Defendants.                  :
                                                                  :
------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

        In or about 1974, plaintiffs Herman Kelley and Bessie Banks co-wrote a song, "Try to

Leave Me If You Can" ("Try" or the "Composition").  In 2012, they allege, "Try" was infringed

when defendant John David Jackson (referred to here by his professional name, "Fabolous")

recorded the song "For the Love" ("Love"), within which portions of "Try" were "sampled."  On

April 22, 2014, plaintiffs, proceeding *pro se*, brought this lawsuit against Fabolous, UMG

Recordings, Inc. ("UMG"),[1] Island Def Jam Music Group ("IDJMG"), Def Jam Recordings

("DJR"),[2] Desert Storm Records ("DSR"), and Kila Records ("Kila").  The Amended Complaint

brought claims for copyright infringement, under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et*

*seq.*, and various state-law claims, based on Fabolous's alleged sampling of "Try."

_____

[1] UMG states that it was incorrectly sued as "The Universal Music Group."  *See* Dkt. 82, at 1 n.1.

[2] UMG states that DJR, an unincorporated division of UMG, was incorrectly sued as "Island Def
Jam Records."  *See* Dkt. 82, at 1 n.1.

On October 19, 2015, the Court dismissed the Amended Complaint in its entirety. It dismissed plaintiffs' copyright infringement claim for lack of standing, but granted plaintiffs leave to replead that claim, in the event they could allege specific facts to support ownership of the Composition. It dismissed plaintiffs' state-law claims with prejudice, because they were preempted by, or sought damages outside the scope of, the Copyright Act.

On February 23, 2016, plaintiffs filed a Second Amended Complaint ("SAC"). It repleads each of plaintiffs' previous claims, and brings new claims for copyright infringement of the master sound recording of "Try" (the "Recording") and unfair competition.

UMG now moves, on behalf of itself, IDJMG, and DJR, to dismiss the SAC in its entirety, under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, that motion is granted in part and denied in part.

## I.      Background

### A.      Factual Background[3]

In or about 1974, plaintiffs and Frank Green, a non-party, co-wrote and produced "Try," a musical composition. SAC, at 2; AC, Ex. F. That year, the "Try" Recording was made, with

---

[3] The following facts are drawn from (1) the SAC, Dkt. 78, and the attached exhibits; (2) the exhibits attached to the Amended Complaint, Dkt. 10 ("AC"), which are incorporated by reference in the SAC; and (3) plaintiffs' brief opposing UMG's motion to dismiss, Dkt. 87 ("Pl. Opp. Br."), and the attached exhibits. *See Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001) (when considering a Rule 12(b)(6) motion to dismiss, a Court may consider documents attached to or incorporated by reference in the complaint); *Pahuja v. Am. Univ. of Antigua*, No. 11 Civ. 4607 (PAE), 2012 WL 6592116, at *1 (S.D.N.Y. Dec.18, 2012) ("[B]ecause a *pro se* plaintiff's allegations must be construed liberally [when evaluating a motion to dismiss], it is appropriate for a court to consider factual allegations made in a *pro se* plaintiff's opposition papers, so long as the allegations are consistent with the complaint.") (collecting cases). In resolving the motion to dismiss, the Court assumes all well-pled facts to be true and draws all reasonable inferences in plaintiffs' favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Banks as artist, and Kelley and Argon Productions ("Argon") as co-producers.  *See* SAC, at 7–8; *id.*, Ex. P.[4]  It was released on Volt Records, a division of Stax Records.  *Id.* at 2.

On June 14, 1974, plaintiffs and Green transferred to the New York Times Music Corporation ("NYT") and Eden Music Corp. ("Eden") all their legal rights in the Composition, in exchange for specified royalties.  Pl. Opp. Br. 4–7; *id.*, Exs. 7–8 (the "June 1974 Contract").  Later that year, the Composition was registered with the United States Copyright Office, with the registration number Eu513738.  AC, Ex. F (the "1974 Registration").  Plaintiffs and Green are listed as the co-authors of the Composition; NYT and Eden are listed as the copyright claimants.  *Id.*  On August 1, 1974, Kelley entered into an agreement with Argon (the "August 1974 Agreement"), whereby Argon agreed to pay Kelley royalties based on sales of the Recording.  *See* SAC, Ex. P.

The SAC alleges that NYT's and Eden's shared music catalogue was later "transferred from company to company[,] . . . but [i]n 1997, all rights to the catalogue which included ['Try'] [] legally reverted to Eden [] and its founder (Clyde Otis) who then transferred the catalogue to his other publishing company 'Iza Music [Corporation]', where [the Composition] resides to date."  *Id.* at 10.  Presently, the SAC alleges, Iza Music Corporation ("Iza") is administered by The Clyde Otis Music Group ("Clyde Otis"), *id*, which is affiliated with Argon, *see* AC, Ex. K.[5]

---

[4] Pursuant to a recording deal executed on May 20, 1974, Argon has been the "sole owner" of the Recording "since its inception."  Pl. Opp. Br., Ex. 20.

[5] Plaintiffs have submitted a declaration by Isidro Otis, Clyde Otis's president, which clarifies that in 1976, NYT was acquired by Time Square Music ("TSM") and Freddy Bienstock Enterprises ("FBE").  Pl. Opp. Br., Ex. 17.  Eden maintained its interest in the Composition's copyright and partnered with TSM and FBE.  *Id.*  In 1987, the three companies "split their partnership . . . and all rights to [the Composition] reverted to Eden."  *Id.*  In or about 1995, Eden transferred its assets to Iza, which has retained ownership of the Composition's copyright.  *Id.*

On April 18, 1994, Kelley entered into a "popular songwriters renewal contract" (the "1994 Contract") with Iza, which superseded the June 1974 Contract as to Kelley.  Pl. Opp. Br. 5; *see* AC, Ex. L.  Under that contract, Kelley transferred to Iza—in exchange for licensing royalties—"any and all rights and interests whatsoever" that he possessed or might acquire in the Composition.  AC, Ex. L, at 1; *id.* at Schedule A.  Banks remains bound by the June 1974 Contract.  Pl. Opp. Br. 5.

Sometime before November 22, 2012, Fabolous, who the SAC claims is under an "exclusive contract" with DJR, recorded "Love."  SAC, at 2, 8.  The SAC alleges that, "[e]mbedded within ['Love'] [is] a sample taken from ['Try']. . . .  The sample . . . is a substantial sequence that plays throughout ['Love']."  *Id.* at 2.  On November 22, 2012, DJR and DSR released "Love" on a CD titled "Fabolous Soul Tape 2 Mix Tape."  *Id.*[6]  On December 12, 2012, "Love" was featured in an "official music video," accessible on YouTube, Spotify, Pandora, and through other streaming services.  *Id.* at 4; *see* http://www.youtube.com/watch?v=nfQSqsQp2GI.  On May 4, 2013, "Love" was included on a CD titled "Fabolous Soul Collection."  SAC, at 4.  The Court refers collectively to these productions as the "Projects."

The SAC alleges that "Love," and the Projects featuring it, quickly achieved "widespread popularity."  *Id.* at 3.  "Love" "enjoyed repeated radio play . . . on several notable radio stations," such as WBLS 107.5 and Power 105.1.  *Id.*  The "Fabolous Soul Tape 2 Mix Tape" "reached 'double platinum' status and was recognized as one of the 'Top Mixtapes of 2012', having been

---

[6] The SAC alleges that DSR is a sub-label of DJR, which, in turn, is a sub-label of UMG.  SAC, at 8.  It alleges that Kila is another sub-label of UMG.  *Id.*

viewed more than 2.3 million times, downloaded nearly one million times, and streamed nearly 600,000 times."  *Id.*  And the "Love" music video received more than 140,000 views.  *Id.* at 4.

On March 24, 2014, Deborah Evans, a representative of Clyde Otis, sent a letter to Ian Allen, a representative of DJR and UMG, notifying him that "Try" had been sampled in "Love." AC, Ex. K.  The letter stated that Clyde Otis/Argon owned all rights in the Recording, and requested a "non-recoupable fee" for Fabolous's use of it in "Love."  *Id.*  In response, the SAC alleges, DJR "refused to obtain a license."  SAC, at 3.  This refusal, plaintiffs claim, evinces defendants' "willful infringement" of plaintiffs' copyright.  *Id.* at 2.

On August 23, 2014, after this action had commenced, Isidro Otis sent Kelley a letter, notifying him that Clyde Otis had decided not to pursue copyright infringement claims against Fabolous for his alleged infringement of the Composition.  AC, Ex. M.  The letter also stated that Clyde Otis had "no objection to [plaintiffs] pursuing this matter independently."  *Id.*; *see* SAC, at 4.  Sometime thereafter, Otis submitted a declaration to the Court attesting that Argon is the "sole owner" of the Recording and "endorse[s]" plaintiffs' infringement claim regarding both the Composition and the Recording.  Pl. Opp. Br., Ex. 20.

## B.    Procedural History

### 1.    Initial History

On April 22, 2014, plaintiffs filed the original Complaint.  Dkt. 2.  On August 27, 2014, they filed the Amended Complaint.  Dkt. 10.  It brought claims for (1) copyright infringement of the "Try" Composition, (2) violation of plaintiffs' "poetic license," (3) "fraudulent deceit and conspiring to swindle," and (4) mental anguish.  *Id.* at 2–9.  Each claim was based on Fabolous's alleged sampling of "Try" in "Love."  *Id.*  Plaintiffs sued, in addition to Fabolous, DSR and Kila,

as "affiliated companies also involved in wrongfully using plaintiff[s'] song." *Id.* at 2. They

sued UMG, IDJMG, and DJR, as the alleged parent companies of DSR and Kila. *Id.*

On June 2, 2015, UMG filed a motion to dismiss the Amended Complaint, or,

alternatively, for summary judgment. Dkt. 48. It represented that IDJMG and DJR are

unincorporated divisions of UMG; accordingly, its motion was also on behalf of those entities.

*Id.* at 1 n.1.[7] The Court thereafter received briefing on UMG's motion. *See* Dkts. 49, 56–69.

### 2.     The October 19, 2015 Decision Granting UMG's Motion to Dismiss

On October 19, 2015, the Court granted UMG's motion to dismiss the Amended

Complaint in its entirety. Dkt. 70 (the "October 19 Decision" or "Decision"), *reported at Kelley*

*v. Universal Music Grp.*, No. 14 Civ. 2968 (PAE), 2015 WL 6143737 (S.D.N.Y. Oct. 19, 2015).[8]

The Court dismissed the copyright infringement claim for lack of standing, because plaintiffs had

not adequately alleged that they are either the legal or beneficial owners of the copyright in the

Composition. Decision, at 6–9. The Court dismissed plaintiffs' "violation of poetic license" and

"fraudulent deceit and conspiring to swindle" claims as preempted by the Copyright Act. *Id.* at

10–11. Finally, the Court dismissed plaintiffs' "mental anguish" claim because it sought

damages outside the scope of the Copyright Act. *Id.* at 11–12.

---

[7] UMG also submitted a declaration by Nicole Wyskoarko, a UMG senior vice president. Dkt. 51. Wyskoarko attested that, contrary to the allegation in the Amended Complaint, DSR and Kila are neither subsidiaries nor affiliates of UMG. *Id.* ¶ 2. To date, Fabolous, Kila, and DSR have not appeared in this action.

[8] In light of that ruling, the Court declined to consider UMG's alternative motion for summary judgment. Decision, at 9 n.6. It noted that "granting summary judgment . . . would not be appropriate where the *pro se* plaintiffs ha[d] not had an opportunity to conduct discovery." *Id.* (citing *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 307 (2d Cir. 2003); *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 98 (2d Cir. 2000); *Perkins v. Bronx Lebanon Hosp.*, No. 14 Civ. 1681 (PAE), 2015 WL 3649330, at *7 (S.D.N.Y. June 11, 2015)). Accordingly, it denied UMG's summary judgment motion, without prejudice to UMG's right to renew such a motion after discovery, in the event the litigation proceeded that far. *Id.*

The Court granted plaintiffs leave to replead "one final time, but only as to their copyright infringement claim under the Copyright Act." *Id.* at 12.  It noted that, "guided by [the Court's] decision, plaintiffs may be able . . . to adequately plead standing to bring such a claim, by alleging concrete facts supporting either actual or beneficial ownership as to [the Composition]." *Id.*  The Court did not, however, grant plaintiffs leave to replead their other three claims, which it dismissed with prejudice. *Id.*

### 3.     The SAC and Subsequent History

On February 23, 2016, plaintiffs filed the SAC.  Dkt. 78.  It repleads each claim in the Amended Complaint, and brings new claims for (1) copyright infringement of the Recording, and (2) "violation of intellectual property." *Id.* at 4–8, 10–14.

On March 23, 2016, UMG moved, on behalf of itself, IDJMG, and DJR, to dismiss the SAC, Dkt. 81, and filed a memorandum of law, Dkt. 82 ("Def. Br."), and a declaration by its counsel, Dkt. 83 ("Bart Decl."), in support.  On May 26, 2016, plaintiffs filed an opposition brief, Pl. Opp. Br., and attached exhibits.  On June 16, 2016, UMG replied.  Dkt. 90 ("Def. Reply Br.").

## II.     Applicable Legal Standards

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

For the purpose of resolving a motion to dismiss, the Court must accept as true all well-pled factual allegations in the complaint, and draw all inferences in the plaintiff's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

The Court is "obligated to construe a *pro se* complaint liberally," *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), interpreting it "to raise the strongest arguments that [it] suggest[s]," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citation omitted). However, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (internal quotation marks and citation omitted). The Court may not read into *pro se* submissions claims inconsistent with the *pro se* litigant's allegations, *see Phillips v. Girdich*, 408 F.3d 124, 127 (2d Cir. 2005), or arguments that the submissions themselves do not "suggest," *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (citation omitted).

## III.   Discussion

The SAC brings claims for (1) copyright infringement of the Composition, (2) copyright infringement of the Recording, (3) violation of intellectual property, (4) violation of plaintiffs' poetic license, (5) fraudulent deceit and conspiring to swindle, and (6) mental anguish. UMG moves to dismiss both copyright infringement claims for lack of standing. UMG also challenges the second of those claims on the ground that it exceeds the scope of plaintiffs' limited right to replead. UMG challenges the "violation of intellectual property" claim on the grounds that it (1) exceeds the scope of plaintiffs' right to replead, and (2) is preempted by the Copyright Act.

Finally, UMG challenges the SAC's last three claims on the grounds that they (1) were dismissed with prejudice in the October 19 Decision, and (2) fail for the same reasons set forth in that decision. The Court addresses each challenge in turn.

### C.     Copyright Infringement of the "Try" Composition

The SAC repleads plaintiffs' claim for copyright infringement of the "Try" Composition, which the Court dismissed without prejudice in the October 19 Decision. SAC, at 4–8; Decision, at 6–9, 12. UMG again moves to dismiss this claim for lack of standing.

"Under the Copyright Act, only 'the legal or beneficial owner of an exclusive right under a copyright' has standing to sue for infringement." *Harris v. Simon & Schuster, Inc.*, 646 F. Supp. 2d 622, 632 (S.D.N.Y. 2009) (quoting 17 U.S.C. § 501(b)); *see also Russian Entm't Wholesale, Inc. v. Close-Up Int'l, Inc.*, 482 F. App'x 602, 604 (2d Cir. 2012) (summary order). A "beneficial owner" for this purpose includes "an author who ha[s] parted with legal title to the copyright in exchange for percentage royalties based on sales or license fees." *Cortner v. Israel*, 732 F.2d 267, 271 (2d Cir. 1984) (quoting H.R. Rep. No. 1476, 94th Cong., 2d Sess. 159, *reprinted in* 1976 U.S. Code Cong. & Ad. News 5659, 5775) (internal quotation marks omitted); *see also id.* ("When a composer assigns copyright title to a publisher in exchange for the payment of royalties, an equitable trust relationship is established between the two parties which gives the composer standing to sue for infringement of that copyright.").

In the October 19 Decision, the Court held that plaintiffs lacked standing to bring their copyright infringement claim because they had not adequately pleaded ownership of the copyright in the Composition. Decision, at 6–9. To support their claim, plaintiffs had attached to the Amended Complaint the 1974 Registration and the 1994 Contract. *See* AC, Exs. F, L. Those documents, the Court held, were insufficient to establish either legal or beneficial

ownership:  The 1974 Registration identified NYT and Eden, not plaintiffs, as the legal copyright

owners.  Decision, at 6–7.  And the 1994 Contract did not support that plaintiffs had retained a

beneficial interest in the copyright.  Under that contract, Kelley purported to transfer to Iza all

rights he held in the Composition in exchange for licensing royalties.  *Id.* at 6.  Critically,

however, the contract "d[id] not establish that . . . plaintiffs by then had acquired rights in [the

Composition] from the owners of such rights (*i.e.*, NYT and Eden), such that [Kelley] could

transfer [them] to [Iza]."  *Id.* at 7–8.  In other words, the Court noted, the 1994 Contract

"presuppose[d], but d[id] not establish, that plaintiffs owned" rights in the Composition.  *Id.* at 8.

Accordingly, it held, plaintiffs had not adequately pleaded standing to sue for copyright

infringement.  *Id.* at 8–9.  In granting plaintiffs a right to amend that claim, the Court advised

that to survive dismissal, plaintiffs would need to allege "concrete facts supporting either actual

or beneficial copyright ownership as to [the Composition]."  *Id.* at 12.

The SAC does not do so.  Instead, it again relies primarily on the 1974 Registration and

the 1994 Contract.  *See* SAC, at 7.  It also attaches royalty statements and a check from Clyde

Otis and Broadcast Music Inc., documenting royalty payments from those organizations to

Kelley for use of the Composition.  *Id.*, Exs. N, O, R.  But, as UMG pointed out in its renewed

motion to dismiss, those documents "fail to establish beneficial ownership for the same reasons

that the 1994 [Contract] did not support beneficial ownership."  Def. Br. 8.  That is, they "merely

support the allegation that Kelley received a royalty stream on the Composition"—but they "do

not establish that [p]laintiffs ever owned a copyright interest in the Composition."  *Id.*  And the

SAC, like the Amended Complaint, does not allege any facts that would support an inference

that plaintiffs either (1) owned the original copyright in the Composition and transferred it to

Eden and NYT in exchange for royalties *before* the 1974 Registration; or (2) acquired copyright

10

ownership after 1974 such that Kelley could transfer rights in the Composition to Iza in the 1994 Contract. *See id.* at 7 (citing SAC, at 4–8).

Plaintiffs' opposition brief, however, cures that deficiency. In it, plaintiffs allege that, as the authors of the Composition, they automatically acquired exclusive rights in the Composition "from the time the work [was] created in fixed form." Pl. Opp. Br. 5 (quoting www.copyright.gov) (internal quotation marks omitted); *see also Thomson v. Larson*, 147 F.3d 195, 205 (2d Cir. 1998) ("The Copyright Act declares that '[c]opyright in a work protected under [Title 17] vests initially in the author or authors of the work.'" (quoting 17 U.S.C. § 201(a)). In June 1974, they allege, they transferred those rights to NYT and Eden, "sign[ing] off as [the] sole owners of ['Try']," in exchange for royalties. Pl. Opp. Br. 5–7 (citing June 1974 Contract). Accordingly, plaintiffs claim, "it was [from their] ownership that [NYT and Eden] obtained ownership of the ['Try'] composition," *before* they registered it with the Copyright Office. *Id.* at 7. And, because plaintiffs "parted with legal title to the copyright in exchange for percentage royalties," they argue, they "are entitled to claim beneficial copyright infringement." *Id.* at 7–8 (internal quotation marks and citation omitted).

Plaintiffs are correct. The allegations in their opposition brief, which are consistent with the June 1974 Contract attached to it, are sufficient to establish their beneficial ownership of the Composition. *See, e.g.*, *Cortner*, 732 F. 2d at 270–71 (music composers retained sufficient beneficial interest in copyright to sue under Copyright Act where they transferred their rights in theme song to TV network in exchange for royalties); *Jones v. Virgin Records, Ltd.*, 643 F. Supp. 1153, 1156–57 (S.D.N.Y. 1986) (plaintiffs "retained a sufficient beneficial interest in [their] song to have standing to sue for any infringement of [its] copyright," where they assigned legal title to music publisher in exchange for right to royalties); *id.* at 1157 (assignment contract

11

sufficient to establish beneficial ownership on summary judgment); *Kamakazi Music Corp. v. Robbins Music Corp.*, 534 F. Supp. 69, 74 (S.D.N.Y. 1982) (Barry Manilow was "proper plaintiff[] to bring an action . . . for copyright infringement . . . since he transferred legal title to the subject copyrights in exchange for a percent of the royalties based on sales or license fees").

Revealingly, UMG, in its reply brief, foregoes any argument to the contrary. *See* Def. Reply Br. 4–5. Instead, it argues that the Court should not consider plaintiffs' "new allegations . . . and documents that were not included, or even referenced, in the SAC." *Id.*

That argument is not without merit. And were plaintiffs represented by counsel, the Court would decline to consider any matters introduced for the first time in their opposition brief. *See Cromwell v. N.Y.C. Health & Hosps. Corp.*, 983 F. Supp. 2d 269, 272 (S.D.N.Y. 2013) ("Courts may not 'consider matters outside the pleadings in deciding a motion to dismiss for failure to state a claim.'" (quoting *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 202 (2d Cir. 2013)).[9] However, because *pro se* plaintiffs' allegations "must be construed liberally," "it is appropriate . . . to consider factual allegations made in [their] opposition papers, so long as the allegations are consistent with the complaint." *Pahuja*, 2012 WL 6592116, at *1 (citing *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987); *Braxton v. Nichols*, No. 08 Civ. 8568 (PGG), 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010)). Further, were the Court to dismiss plaintiffs' claim for lack of standing, plaintiffs would inevitably seek to amend—and the Court would permit them to amend—the SAC to incorporate their new allegations and evidence. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."); *Grullon v. City of New Haven*, 720 F.3d 133, 140–41 (2d

---

[9] The June 1974 Contract is arguably incorporated by reference in the SAC. It is listed among the "Exhibits Newly Acquired" as "Exhibit (W-Pg. 1. & 2.) The Eden/Time Square Wrtrs Agreement." SAC, at 17. However, it is neither discussed in the SAC nor attached to it.

Cir. 2013) (district court erred in denying *pro se* plaintiff leave to amend, where plaintiff attached to his opposition brief a letter which, coupled with the allegations in his complaint, was "sufficient to give an indication that a valid claim might be stated") (internal quotation marks, citation, and alterations omitted).

Accordingly, the interests of fairness and efficiency both counsel in favor of treating plaintiffs' allegations regarding the June 1974 Contract, and the contract itself, as cognizable on this motion. Because these are adequate to plead standing to bring a claim for copyright infringement as to the Composition, UMG's motion to dismiss that claim is denied.

### D.      Copyright Infringement of the "Try" Sound Recording

The SAC adds a new claim for copyright infringement of the "Try" Recording. *See* SAC, at 7–8.[10] It alleges that, under the August 1974 Agreement, plaintiffs are "entitle[d] to royalties generated from the [] use [of that recording]." *Id.* at 8 (citing *id.*, Ex. P). UMG argues that plaintiffs lack standing to bring this claim because they have not adequately pleaded legal or beneficial ownership of the Recording. Def. Br. 9–11; Def. Reply Br. 1–2.

UMG is correct. The declaration by Isidro Otis indicates that Argon is the "sole [legal] owner" of the Recording. Pl. Opp. Br., Ex. 20.[11] And the August 1974 Agreement does not

---

[10] The Copyright Act recognizes sound recordings and their underlying musical compositions as separate works with their own distinct copyrights. *See* 17 U.S.C. § 102(a)(2) (musical works, including any accompanying words); *id.* § 102(a)(7) (sound recordings); *see also Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 62 F. Supp. 3d 325, 335 (S.D.N.Y. 2014) ("A copyright in a musical composition is *not* [the] same as a copyright in a sound recording of a performance of that composition."); *In re Cellco P'ship*, 663 F. Supp. 2d 363, 368 (S.D.N.Y. 2009) ("[T]here are separate bundles of rights in a musical composition and in its embodiment in a sound recording.").

[11] UMG has submitted a copyright registration application for the Recording, dated April 5, 1976, which identifies Quality Records Limited, not Argon, as the copyright claimant. Bart Decl., Ex. 1. That document is not cognizable on a motion to dismiss, as it is neither integral to

support plaintiffs' beneficial ownership:  It indicates that Argon agreed to pay Kelley royalties based on sales of the Recording; but it does not show that plaintiffs possessed rights in the Recording to begin with, which they transferred to Argon in exchange for that royalty stream. *See id.*, Ex. 15.  In other words, like the 1994 Contract, which the Court held insufficient to support beneficial ownership of the Composition, the August 1974 Agreement "presupposes, but does not establish, that plaintiffs owned" rights in the Recording.  Decision, at 8; *see Poindexter v. EMI Record Grp. Inc.*, No. 11 Civ. 559 (LTS), 2012 WL 1027639, at *3 (S.D.N.Y. Mar. 27, 2012) (that co-producer of sound recording received royalties did not support standing, where he could not show that "he ever had ownership rights in the [recording]").

Indeed, in their opposition brief, plaintiffs concede that they have no ownership interest in the Recording.  *See* Pl. Opp. Br. 11 ("Plaintiff H. Kelley is not claiming ownership of the Master Recording, he only declares that he was wrongfully and willfully deprived of his share of the production credits and royalties which would have been granted within the license agreement, if defendants . . . had obtained a license from [Argon]."); *id.* at 12 ("Plaintiffs are not claiming Beneficial Copyright Infringement for [the Recording].  They are only claiming that they are being deprived of their royalties and their writers, artist, and producer credit acknowledgments.").  And they do not allege that they have an exclusive license to it.  Accordingly, they lack standing to bring their claim for sound-recording infringement.  *See Newsome v. Brown*, 209 F. App'x 11, 13 (2d Cir. 2006) (summary order) ("Since Newsome is neither the legal, nor beneficial owner of Song 2's renewal term, she lacks standing to bring a claim for its infringement.") (citing 17 U.S.C. § 501(b)); *Eden Toys, Inc. v. Florelee*

_____

nor incorporated by reference in the SAC.  However, by either account, plaintiffs are not the legal owners of the Recording.

14

*Undergarment Co.*, 697 F.2d 27, 32 (2d Cir. 1982) ("The Copyright Act authorizes only two types of claimants to sue for copyright infringement: (1) owners of copyrights, and (2) persons who have been granted exclusive licenses by owners of copyrights.") (citing 17 U.S.C. § 501(b)).[12]  This claim must, therefore, be dismissed.[13]

### E.     State-Law Unfair Competition Claim

The SAC also brings a new claim labeled "violation of intellectual property."  SAC, at 10–11.  It alleges that:

> defendants['] . . . exclu[sion of] plaintiffs['] name [from "Love"] and [failure to] give them credits for their sampled contribution . . . appear[s] to constitute an act of unfair competition.  To date this matter hasn't allowed plaintiffs to compete with the listed contributors [in]volved with the making of ["Love"] by excluding their names.  Accordingly[,] defendants had no right to use, manufacture, reproduce, or promote plaintiff[s'] creation or idea.

*Id.*

---

[12] That Argon purports to have authorized plaintiffs to pursue this claim, *see* Pl. Opp. Br., Ex. 20, is irrelevant to standing.  It is well established that "the Copyright Act does not permit copyright holders to choose third parties to bring suits on their behalf."  *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991); *see Poindexter*, 2012 WL 1027639, at *3 (right-to-sue clause in agreement between plaintiff and copyright claimant did not confer standing on plaintiff to bring suit under Copyright Act); *Auscape Int'l v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 235, 239 n.16 (S.D.N.Y. 2004) ("[T]he fact that the putative copyright holders authorized [plaintiff] to bring claims on their behalf is insufficient to confer standing.").

[13] In light of this ruling, the Court need not address UMG's alternative arguments that this claim must be dismissed because (1) it is untimely and exceeds the scope of plaintiffs' limited right to replead, *see* Def. Br. 8–9 (citing *Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) (summary order) ("District courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted.") (collecting cases)); and (2) plaintiffs have not alleged that the Recording is registered with the Copyright Office, *see* Def. Br. 9–10 n.6 (citing *Tuff-N-Rumble Mgmt., Inc. v. Sugarhill Music Pub. Inc.*, 49 F. Supp. 2d 673, 677 (S.D.N.Y. 1999) ("[D]istrict courts are without subject matter jurisdiction to hear claims for federal copyright infringement unless a party asserts in his pleadings that he has received an actual certificate of registration or its denial from the Copyright Office.")).

The Court construes this as a claim for unfair competition under New York law. *See Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 456 (S.D.N.Y. 2005) ("The essence of the tort of unfair competition under New York common law is the bad-faith misappropriation, for the commercial advantage of one person, [of] a benefit or 'property' right belonging to another [person]." (internal quotation marks and citations omitted)). UMG argues that this claim must be dismissed as preempted by the Copyright Act. Def. Br. 12; Def. Reply Br. 3–4. UMG is correct.

Section 106 of the Copyright Act "affords a copyright owner the exclusive right to: (1) reproduce the copyrighted work; (2) prepare derivative works; (3) distribute copies of the work by sale or otherwise; and, with respect to certain artistic works, (4) perform the work publicly; and (5) display the work publicly." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992) (citing 17 U.S.C. § 106(1)–(5)). A state-law cause of action is preempted by the Copyright Act if "the subject matter of the state-law right falls within the subject matter of the copyright laws and the state-law right asserted is equivalent to the exclusive rights protected by [§ 106]." *Kregos v. Associated Press*, 3 F.3d 656, 666 (2d Cir. 1993) (internal citation omitted); *see* 17 U.S.C. § 301(a) ("[A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright . . . are governed exclusively by this title. . . . [N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State."). "Whether a state law claim is preempted depends on whether it is derivative of a copyright claim or is based on an 'extra element' beyond those of a copyright claim." *Weber v. Geffen Records, Inc.*, 63 F. Supp. 2d 458, 462 (S.D.N.Y. 1999).

Here, the essence of plaintiffs' unfair competition claim is that defendants have violated their exclusive rights to reproduce or prepare derivative works of the "Try" Composition and/or Recording.[14]  As pled, this claim "not only is based on a copyright claim, but also lacks any extra element making it sufficiently different from a copyright claim to escape preemption."  *Weber*, 63 F. Supp. 2d at 462.  Indeed, the Second Circuit has held that "unfair competition and misappropriation claims grounded solely in the copying of a plaintiff's protected expression are preempted by [the Copyright Act]."  *Computer Assocs.*, 982 F.2d at 717 (collecting cases); *accord Kregos*, 3 F.3d at 666 ("The common law of unfair competition in New York requires proof of no element that is in excess of those elements necessary to establish a copyright-infringement action.").[15]  This claim must, therefore, be dismissed.[16]

### F.    State-Law Claims for Violation of Plaintiffs' Poetic License, Fraudulent Deceit and Conspiring to Swindle, and Mental Anguish

The SAC also repleads plaintiffs' state-law claims for (1) violation of plaintiffs' poetic license, (2) fraudulent deceit and conspiring to swindle, and (3) mental anguish.  SAC, at 11–14. These claims are materially identical to those that the Court dismissed with prejudice in the

---

[14] *Compare* SAC, at 11 ("[I]ntellectual property is valuable due to it's [sic] bundle of rights because it represents ownership and an exclusive right to use, manufacture, reproduce, or promote a unique creation or idea."), *with* 17 U.S.C. § 106 (exclusive rights protected by copyright include rights to reproduce, prepare derivative works of, distribute, perform, and publicly display the work).

[15] *See also Cabell v. Sony Pictures Entm't, Inc.*, 425 F. App'x 42, 43 (2d Cir. 2011) (summary order) ("[T]he district court correctly dismissed the New York unfair competition claim as preempted by § 301 of the Copyright Act."); *Urbont v. Sony Music Entm't*, No. 15 Civ. 1778, 2016 WL 4056395, at *11 (2d Cir. July 29, 2016) (same); *Weber*, 63 F. Supp. 2d at 463 (unfair competition claim preempted by Copyright Act); *Arden v. Columbia Pictures Indus., Inc.*, 908 F. Supp. 1248, 1264 (S.D.N.Y. 1995) (same).

[16] In light of this ruling, the Court need not address UMG's alternative argument that this claim must be dismissed because it exceeds the scope of plaintiffs' right to amend.  *See* Def. Br. 11; Def. Reply Br. 4.

October 19 Decision.  *See* Decision, at 10–12; AC, at 6–9.  As the Court warned plaintiffs in its Order of March 3, 2016, "to the extent that a claim was previously brought and dismissed with prejudice, the Court will not permit plaintiffs to replead it."  Dkt. 80; *see Feinman v. Schulman Berlin & Davis*, 677 F. Supp. 168, 173 (S.D.N.Y. 1988) ("Plaintiffs obviously may not replead as to matters which the Court has dismissed with prejudice."); Black's Law Dictionary (10th ed. 2014) (defining "dismissal with prejudice" as "[a] dismissal . . . barring the plaintiff from prosecuting any later lawsuit on the same claim").  Accordingly, these claims must also be dismissed.[17]

Even if the Court had permitted plaintiffs to replead these claims, they would again fail for the reasons stated in the October 19 Decision:  They are "either preempted by or seek damages outside the scope of the Copyright Act."  Decision, at 12.

As to the "violation of poetic license" claim, the SAC alleges that plaintiffs and their co-writer and publisher "maintain exclusive rights under copyright law to make creative changes in their copyrighted work."  SAC, at 13.  Defendants, it claims, violated plaintiffs' "poetic license rights" by "wrongfully and willfully act[ing] as though were the writers of ['Try'] by extracting a specific section of it (sample) from the original master and in doing so, ma[king] unauthorized alterations that speeded up the tempo, [and] distorted and damaged the musical and vocal characteristics of [the] song."  *Id.*  As the Court noted in the October 19 Decision, "the gravamen

---

[17] The Court's dismissal of plaintiffs' state-law claims was not, as plaintiffs suggest, premised on their failure to establish ownership of the Composition.  *See* Pl. Opp. Br. 10 ("[S]ince plaintiffs are now seeking to claim 'Beneficial Copyright Infringement,'. . . they believe it makes sense to request the reinstate[ment] of all preemptive dismissals on the grounds that they were granted because of the initial 'Copyright Infringement' claim as oppose[d] to the now s[ought] after Beneficial Copyright Infringement Claim.").  To the contrary, as discussed below in text, the Court's basis for dismissing those claims was independent of its ruling as to the federal copyright infringement claim.  Accordingly, that plaintiffs have now adequately pled beneficial ownership of the "Try" Composition does not warrant revisiting their state-law claims.

of [this] claim is that defendants have violated plaintiffs' exclusive right to prepare derivative works of the 'Try' composition, which is a right conferred under the Copyright Act."  Decision, at 11 (citing 17 U.S.C. § 106(2)).  It is, therefore, preempted.[18]

As to the fraudulent deceit/conspiring to swindle claim, the SAC alleges that defendants "w[ove] a web of confusion" by posting "Love" for free on some websites, while posting it for sale on others, thereby "imply[ing] that [it] was for promotional use only."  SAC, at 14.[19]  Like plaintiffs' original claim under this label, this claim denotes a violation of plaintiffs' exclusive distribution rights in "Try"—rights which fall "within the general scope" of the Copyright Act. 17 U.S.C. § 301(a); see id. § 106(3); Decision, at 11 ("[P]laintiff's claim of deceit and swindling is ultimately that defendants breached plaintiffs' purportedly exclusive distribution rights. Plaintiffs' claim of such a breach may not be pursued under these alleged state-law causes of action, but under the Copyright Act only.").  The SAC adds an allegation that defendants "act[ed] in concert to deliberately not copyright ['Love'] in order to block any avenues that would allow plaintiffs to claim their rightful entitlements [under] . . . section 106 of 'The Copyright Act.'"  SAC, at 14.  But "intent . . . [is] not [an] extra element[] that make[s] a state law claim qualitatively different [from a copyright infringement claim]."  *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004) ("[The Second Circuit] take[s] a restrictive view of what extra elements transform an otherwise equivalent claim into one that is

---

[18] This claim is also subject to dismissal for the independent reason that "violation of poetic license" is not a cognizable cause of action under New York law.  Plaintiffs have not cited any legal authority to support this claim, and the Court is aware of none.  To the extent an analogous cause of action does exist, however, it would be subsumed by the Copyright Act's exclusive right to prepare derivative works.

[19] The SAC references screenshots, which were attached to the Amended Complaint, of websites offering the Projects for free download, AC, Ex. H, and for sale, *id.*, Ex. I.

qualitatively different from a copyright infringement claim."). Accordingly, this claim, too, is

preempted by the Copyright Act.[20]

Finally, as to the "mental anguish" claim, the SAC alleges that, because of the purported

infringement, Kelley has "suffered from feelings of distress, anxiety and depression, which

interferes with his creative ability, hinders his inspiration to write and consequently stagnates his

income." SAC, at 11; *see also id.* ("Mental anguish and it's [sic] social effects has personally

affected [Kelley] by knowing that word had spread among his friends who knew he was being

deprived of his entitlements."). "These losses are harmful to both plaintiffs," the SAC alleges,

---

[20] This claim fails for the separate reason that "fraudulent deceit and conspiring to swindle" is
not a cognizable cause of action under New York law. To the extent plaintiffs intend to bring a
civil conspiracy claim, New York law does not recognize that tort. *See Shared Commc'ns Servs.
of ESR, Inc. v. Goldman Sachs & Co.*, 803 N.Y.S.2d 512 (1st Dep't 2005) (slip opinion); *SRW
Assocs. v. Bellport Beach Prop. Owners*, 517 N.Y.S.2d 741, 744 (2d Dep't 1987) ("There is no
substantive tort of conspiracy [under New York law]."). *United States v. Empire Hat & Cap
Mfg. Co.*, 47 F. Supp. 395 (E.D. Pa. 1942), on which plaintiffs rely, is inapposite because it
involved a criminal conspiracy in violation of the Sherman Antitrust Act. *See* SAC, at 14.
Section 5.03 of the Model Penal Code, which plaintiffs also cite, is similarly inapplicable, as it
pertains to criminal conspiracy. *See id.*

To the extent plaintiffs intend to bring a fraudulent misrepresentation claim, that claim also fails,
because the SAC does not allege "justifiable reliance." "Under New York law, '[t]o state a cause
of action for fraud, a plaintiff must allege a representation of material fact, the falsity of the
representation, knowledge by the party making the representation that it was false when made,
justifiable reliance by the plaintiff and resulting injury.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d
273, 291 (2d Cir. 2006) (quoting *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 165 (1st Dep't 2003)).
"Where the claim is premised on concealment . . . , the complaint must still allege: (1) what the
omissions were; (2) the person responsible for the failure to disclose; (3) the context of the
omissions and the manner in which they misled the plaintiff; and (4) what the defendant obtained
through the fraud." *Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 621 (S.D.N.Y.
2013) (internal quotation marks and citation omitted). Here, the SAC can arguably be construed
as alleging that defendants, on occasion, failed to disclose their commercial exploitation of the
"Love" recording. But it does not allege—much less with the specificity required by Federal
Rule of Civil Procedure 9(b)—that plaintiffs were misled by that misrepresentation. And any
such inference is belied by the allegation that defendants openly offered the Projects for sale on
multiple websites. *See* SAC, at 14; AC, Exs. I(a)–(b). This allegation evinces plaintiffs'
awareness of defendants' commercial exploitation of the allegedly infringing recording.

"because they deprive them of the means to benefit from their bundle of rights as beneficial copyright owners." *Id.* at 12.  As the Court noted in the October 19 Decision, it understands these allegations, although presented as a claim of liability, to describe a category of alleged damages which plaintiffs seek to recover.  *See* Decision, at 12.[21]  Because emotional distress damages are not compensable under the Copyright Act, this claim must also be dismissed.  *See id.* (citing *Stern v. Does*, 978 F. Supp. 2d 1031, 1050 (C.D. Cal. 2011)); *see also Garcia v. Google, Inc.*, 786 F.3d 733, 745 (9th Cir. 2015) ("[A]uthors cannot seek emotional distress damages under the Copyright Act, because such damages are unrelated to the value and marketability of their works.").

## CONCLUSION

For the foregoing reasons, the Court grants UMG's motion to dismiss all claims in the SAC, save the copyright infringement claim as to the Composition.  Plaintiffs may proceed to discovery on that claim.  As per its practice in *pro se* cases, the Court, by separate order, is

---

[21] To the extent the SAC can be construed as claiming negligent or intentional infliction of emotional distress, it fails to state a claim.  "[K]nowing and purposeful copyright infringement . . . does not rise to the level of 'extreme and outrageous' that New York courts contemplate to sustain an intentional [or negligent] infliction of emotional distress claim."  *Harley v. Nesby*, No. 08 Civ. 5791 (KBF), 2012 WL 1538434, at *5 (S.D.N.Y. Apr. 30, 2012); *see also Sheila C. v. Povich*, 781 N.Y.S.2d 342, 351 (1st Dep't 2004) ("[A] cause of action for either intentional or negligent infliction of emotional distress must be supported by allegations of conduct by the defendants so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (internal quotation marks and citation omitted)).  And a claim for negligent infliction of emotional distress "generally must be premised upon the breach of a duty owed to plaintiff which either unreasonably endangers the plaintiff's physical safety, or causes the plaintiff to fear for his or her own safety."  *Bernstein v. E. 51st St. Dev. Co., LLC*, 914 N.Y.S.2d 3, 4 (1st Dep't 2010) (internal quotation marks and citation omitted).  Here, the SAC is devoid of any allegation that defendants have threatened plaintiffs' safety—it alleges only that the purported copyright infringement has impaired Kelley's mental state and inspiration to write. *See* SAC, at 11.

21

referring this case to the assigned Magistrate Judge (Hon. James C. Francis IV) for general pretrial supervision.

The Clerk of Court is respectfully directed to terminate the motions pending at docket numbers 81 and 91.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: September 29, 2016
       New York, New York